IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN
_____

SHEILA ANNE THOMAS,

                    Plaintiff,

     v.

KILOLO KIJAKAZI,
Acting Commissioner of Social Security Administration,

                    Defendant.

OPINION AND ORDER

22-cv-650-slc
_____

Plaintiff Sheila Anne Thomas brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of an adverse decision of the acting commissioner of the Social Security Administration. Thomas argues that the administrative law judge (ALJ) who reviewed her claim at the administrative level erred by failing to consider adequately her symptoms associated with borderline personality disorder (BPD) and not including sufficient limitations in the residual functional capacity assessment (RFC). The court agrees that the ALJ did not adequately grapple with some of the evidence of record, which, if credited, would suggest a greater level of impairment than the ALJ found and which would preclude Thomas from performing full time work. Accordingly, I am reversing the decision and remanding this case to the Commissioner for further proceedings.

RECORD FACTS

The following facts are drawn from the administrative record (AR), filed with the acting commissioner's answer, dkt. 8:

## I. Procedural History

Thomas initially sought benefits based on physical and mental impairments on October 15, 2020, alleging disability beginning on May 15, 2020, when she was 38 years old. AR 14,

28.  Thomas has a date last insured of September 30, 2021.  AR 16.  After her application was denied initially in April 2021, and on reconsideration in November 2021, she requested an administrative hearing before an ALJ.  AR 14.  Her claim proceeded to a telephonic hearing on March 15, 2022, at which Thomas testified and was represented by an attorney.  *Id.*

ALJ Ahavaha Pyrtel issued a written decision on March 30, 2022, finding that Thomas suffered from the following severe impairments:  bilateral carpal tunnel syndrome, status post release on the right; obesity; obstructive sleep apnea; anxiety; mood disorder; depression; and post-traumatic stress disorder.  AR 17, 30.  After finding that Thomas's impairments were not severe enough to meet or medically equal the criteria for a listed disability, the ALJ ascribed a RFC of light work with additional physical, mental, and environmental restrictions.  AR 18-21.

With respect to Thomas's mental impairments–which are the only impairments at issue in this appeal–the ALJ found that Thomas could perform simple, routine, and repetitive tasks; occasionally interact with supervisors and coworkers; tolerate few changes in a routine work setting; and never interact with the public.  Based on the testimony of a vocational expert (VE), and over the objections of Thomas's counsel, the ALJ found that Thomas was not disabled because she could perform a significant number of jobs in the national economy, including mail clerk, sorter, and tester.  AR 28-30.  After the Appeals Council declined review, Thomas appealed to this court.

## II.  Evidence Related to BPD

### A.  Medical Opinions

During the relevant period, Thomas received mental health treatment from therapists Valerie Herber, APNP, and Joanne Beraldi, MSW, who both provided opinions regarding

2

Thomas's mental health symptoms and limitations.  In a letter dated April 12, 2021, Beraldi identified Thomas's primary diagnosis as PTSD, AR 801, and opined that Thomas "has both physical and emotional limitations that would likely interfere with her ability to maintain employment at this time," AR 803.  On May 19, 2021, Herber completed a form in which she listed Thomas's diagnosis as major depressive disorder, AR 843, and noted that Thomas met or equaled various impairments, AR 836-43, that would limit her functioning , AR 843-55.  Herber found that Thomas met Listing 12.08 (Personality and Impulse-Control Disorders), which includes BPD[1], based on Thomas's extreme or marked limitations in her abilities to interact with others and concentrate, persist, or maintain pace and her fear of and inability to trust other people.  AR 840-41.  In response to the question of whether Thomas was a malingerer, Herber did not respond yes or no but wrote that Thomas had times of exaggerated symptoms.  AR 848. She also wrote that Thomas did not put in enough effort to overcome her fears of engaging in society, *id.*, and full-time work would be challenging but not impossible, AR 846.

The ALJ found the opinions of Herber and Beraldi generally unpersuasive.  *See* AR 23 (noting Beraldi's opinion was vague as to functional limitations and relied too heavily on Thomas's subjective reporting); and AR 25 (describing Herber's opinion as speculative, not adequately supported with evidence or explanation, and used "non-program language" quantifying mental limitations by daily percentage).

In addition, there are two specific references in the record to Thomas having BPD:  (1) advanced registered nurse practitioner Elizabeth Heth noted Thomas's BPD as ongoing in the "problem list/past medical history" and "assessment/plan" sections of progress notes on

---

[1] *See* 12.00 Mental Disorders § B.7.b, 20 C.F.R. § Pt. 404, Subpt. P, App. 1.

December 8 and 28, 2020 and January 20, 2021, AR 548-50, 647, and 651; and (2) consultative psychological examiner Jamie Engstrom noted a provisional BPD diagnosis in her March 27, 2021 report, AR 796. Engstrom based this diagnosis on Thomas's self-described pattern of unstable interpersonal relationships, self image, and impulsivity; general intolerance of being alone; emotionless mood and feelings of emptiness; and marked reactivity to interpersonal events, including anxiety, dysphoria, irritability, and sometimes intense anger. *Id.* Angstrom opined that Thomas had moderate to marked limitations in her abilities to interact with others and adapt or manage herself, "as she was likely to be highly sensitive and experienced rapid mood shifts and marked affective instability in response to even minor interpersonal stressors." AR 796-97. Engstrom's report specifically states that given her diagnoses, Thomas "is likely to be overly sensitive and irritable, which would adversely impact her relationships with coworkers, supervisors, and the public" and "could lead to angry and aggressive outbursts." AR 796. The ALJ did not question Engstrom's BPD diagnosis, yet he found her opinion only partially persuasive. *See* AR 25 (describing limitations as ambiguous and unsupported by longitudinal treatment record).

The state agency consultant reviewing the record at the initial level of review on April 5, 2021, found that Thomas had only mild functional limitations. AR 26. However, at the reconsideration level on November 1, 2021, Dr. Joanne Coyle reviewed the record and wrote that Thomas's 12.08 personality and impulse-control disorders and 12.15 trauma and stress-related disorders were severe and caused moderate social interaction and adaptation limitations. *Id*. Coyle noted in the narrative section of the form that Thomas "is capable of brief superficial interactions with the general public," "can participate in typical interactions with coworkers and

supervisors while completing simple tasks of a nonsocial and independent nature," "is able to adapt to minor changes in routine," and "is capable of independent goal directed behavior."  AR 86-87.  The ALJ found Coyle's opinion generally persuasive and limited Thomas to occasional interactions with coworkers and supervisors and no public interaction.  AR 21, 26.

### B.  Symptoms

Thomas self-reported or exhibited the following symptoms in her visits with providers:

- A history of unstable interpersonal relationships with irritability and aggression.  *See* AR 448-51 (Thomas began to suspect that her friend/roommate and partner were engaged in inappropriate or suspicious behavior).

- Trusting very few people.  *See* AR 792, 803, 810, 818, 830, 1181, 1184, 1187, 1192, 1210, 1211, 1214.

- Difficulty relating with counselors.  *See* AR 810 (Jan. 14, 2021 assessment that Thomas was in counseling two times in the past but was not comfortable either time).

- Avoidance behavior with public and crowds.  *See* AR 443, 807, 1181 ("I would rather spend my time with animals than people."), 1226, 1235, 1246, 1269, 1302, 1328, 1346.

- Having an unstable mood and reaction to people.  *See* AR 1260 and 1292 (Thomas presented as unstable or unpredictable to physical therapist on Jul. 13 and Sept. 16, 2021).

- Having an angry, agitated, or frustrated demeanor in many therapy sessions.  *See* AR 803 (Beraldi reported on Apr. 12, 2021 that Thomas "appear[s] agitated and angry much of the time"); AR 1304, 1330, and 1348 (Herber noted "mildly frustrated mood" in mental status exam on Sept. 21, Oct. 26, and Nov. 29, 2021).

- General irritability, anger, and agitation—which has led to punching walls and destroying a game console—for which she requires treatment with risperidone.  *See* AR 634, 791, 857, 1207, 1210, 1242, 1246, 1251-52.

At the hearing, Thomas testified that her inability to socialize very well with others, along with her physical limitations, prevents her from performing work of any kind.  AR 46.  She relies on her housemate and her sister to complete even simple household chores and tasks, AR 49-51; she has punched a wall out and broken mirrors, windows, a gaming system, and the dashboard in her car of frustration with people, AR 52; she becomes anxious, suspicious, and/or paranoid around others, particularly when she is around people without her sister or roommate, AR 52-56 (describing how she left a store when she was left alone for a minute by her sister and could not enter a grocery store alone); and she has difficulty in forming new relationships due to these problems and her difficulties with trust, AR 53.

OPINION

In reviewing an ALJ's decision, this court is limited to determining whether the decision is supported by "substantial evidence," meaning "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted).  This deferential standard of review means that the court does not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [our] judgment for that of the Commissioner."  *Deborah M. v. Saul*, 994 F.3d 785, 788 (7th Cir. Apr. 14, 2021) (quoting *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019)); *see also Grotts v. Kijakazi*, 27 F.4th 1273, 1276 (7th Cir. 2022) (noting substantial evidence is not high threshold: "[w]e will affirm ALJ decisions to deny disability benefits when the ALJ follows applicable law and supports its conclusions with substantial evidence.").  However, the ALJ must identify the relevant evidence and build a 'logical bridge' between that

evidence and the ultimate determination." *Moon v. Colvin*, 763 F.3d 718, 721 (7th Cir. 2014)
(citations omitted); *see also Deborah M.*, 994 F.3d at 788 ("[A]n ALJ doesn't need to address
every piece of evidence, but he or she can't ignore a line of evidence supporting a finding of
disability."); *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005) ("[T]he ALJ must
. . . explain his analysis of the evidence with enough detail and clarity to permit meaningful
appellate review."). Thomas bears the burden of proving that she is disabled. *Karr v. Saul*, 989
F.3d 508, 513 (7th Cir. 2021).

The focus of Thomas's appeal is the ALJ's RFC determination, which is an assessment
of the most a claimant can do despite her impairments and limitations. 20 C.F.R. § 404.1545;
SSR 96-8p. In determining a claimant's RFC, the ALJ considers the limiting effects of medically
determinable impairments and any symptoms caused by those impairments, including pain. *Id*.
The ALJ's RFC finding is conclusive if supported by substantial evidence. *Pepper v. Colvin*, 712
F. 3d 351, 363 (7th Cir. 2013).

Thomas's primary challenge is that the ALJ's RFC assessment failed to account for
significant evidence regarding her BPD. She argues specifically that:

(1) The ALJ did not properly consider Thomas's self-reported symptoms and
mental status examinations "in light of" her BPD, *see* dkt. 11 at 17 and 22-23
(citing Social Security Ruling (SSR) 16-3p, 2017 WL 5180304, at *4 (Oct. 25,
2017) ("some individuals may experience symptoms differently and may be
limited by symptoms to a greater or lesser extent than other individuals");

(2) The ALJ: failed to otherwise explain how she accounted for the effects of
Thomas's BPD;

(3) The ALJ: cherry-picked the evidence related to Thomas's subjective symptoms
to favor her conclusion that Thomas could perform full-time work; and

(4) The ALJ: found that Thomas was capable of occasional interactions with coworkers and supervisors without explaining why she deviated from Dr. Coyle's (state agency consultant) more stringent restrictions in this area.

As explained below, the court agrees that the ALJ did not adequately address the evidence concerning Thomas's BPD and social interaction limitations, which suggest a greater level of impairment than the ALJ found.  Therefore, this case must be remanded for another look.

## II.  ALJ's Analysis of Thomas's BPD

The ALJ did not find that Thomas was severely impaired by BPD and did not discuss BPD or any of Thomas's associated symptoms in the step 2 analysis.  However, as Thomas concedes, the Seventh Circuit has held that "[s]tep two is merely a threshold inquiry; so long as one of a claimant's limitations is found to be severe, error at that step is harmless."  *Ray v. Berryhill*, 915 F.3d 486, 492 (7th Cir. 2019) (internal citation omitted).  Nonetheless, this does not relieve the ALJ of her duty to "consider the limitations imposed by all impairments, severe and non-severe" in the RFC determination.  *Id.* (citing 20 C.F.R. § 404.1523; *Denton v. Astrue*, 596 F.3d 419, 423 (7th Cir. 2010)); *see also McCorkle v. Kijakazi*, No. 22-1638, 2023 WL 179983, at *3 (7th Cir. Jan. 13, 2023) (citing *Ray* for same).

The ALJ generally discussed Thomas's mental health symptoms at step 3, finding that Thomas had moderate limitations in her abilities to interact with others and adapt and manage herself.  However, her analysis of Thomas's subjective complaints regarding these two functional areas is limited to the following:

> The claimant testified that she is unable to socialize with others and that her paranoia and mistrust of others has prevented her from going into stores on occasion.  However, she lives with a roommate, visits with her sister frequently, goes shopping once or

8

twice weekly with her sister.  The claimant complained to her
behavioral health managers of social withdrawal and irritability.
She demonstrated phobic avoidance behavior and she expressed a
fear of crowded places (Exhibit 19F, pp. 48 and 81).  The claimant
described panic attacks when she was around other people for
prolonged periods (Exhibit 19F, p. 125).  Despite her complaints
of not getting along with others, the claimant complained
throughout her mental health therapy sessions that she had to
drive her relatives frequently because she was the only person in
the family who had a car (Exhibit 14F).

*   *   *

The claimant complained to her behavioral health managers that
she had mood swings.  She had difficulty getting to sleep because
of racing thoughts and she only slept a few hours a night (Exhibit
19F, pp. 48 and 80-81). The claimant reported having three or
four crying spells per week (Exhibit 13F).

AR 20.

At step 4, the ALJ briefly summarized the medical evidence concerning Thomas's

treatment for major depressive disorder, including infrequent therapy and various psychotropic

medications for her anxiety, mood disorder, and sleep problems.  AR 22-23.  She cursorily noted

that Thomas testified that she cannot socialize with others and had difficulty trusting people.

*Id*.  Although the ALJ noted Thomas's provisional BPD diagnosis in summarizing Engstrom's

opinion, she did not discuss Thomas's symptoms or Engstrom's description of them in any

detail.  The only other mention of Thomas's symptoms came at the end of the ALJ's step 4

analysis:

The claimant's mental impairments are more significant [than her
physical impairments] but the record does not support a medical
need for "constant intervention of others in her life" as argued by
her representative.  However, there does appear to be a reluctance
to engage socially and an exaggeration of symptoms as noted by
her treater at Exhibit 15F.  Although the claimant alleges that she
has nonspecific visions of violence towards individuals and that she

has punched holes in walls, the record does not reflect a tendency to act violently or that the claimant is otherwise a threat to herself or others.  She has not required any inpatient or emergency treatment for her mental health symptoms.

AR 27.

Even though the ALJ mentions some of Thomas's difficulties, her brief discussions of Thomas's symptoms ignore the seriousness, breadth, and pervasiveness of these symptoms.  For example, the ALJ focuses on Thomas's ability to go shopping, visit her sister, and drive some of her relatives around, but she ignores Thomas's history of unstable interpersonal relationships, lack of trust, and inability to regulate her emotions–particularly anger, frustration, and irritability–that even Thomas's providers have observed during appointments.  The ALJ also fails to explain how Thomas's symptoms are inconsistent with the longitudinal medical record, to which the ALJ gave only a passing nod.  Although the ALJ correctly notes that Herber mentioned that Thomas exaggerates her symptoms at times and could do more to overcome her social fears, the ALJ largely ignored the level of impairment that Thomas has in interacting with others and adapting to changed or new environments in which other people are present.

As the Commissioner notes, a diagnosis or symptoms alone are not evidence of disability; what matters are the work-related limitations that result from a particular medical impairment. *McGillem v. Kijakazi*, No. 20-2912, 2022 WL 385175, at *4 (7th Cir. Feb. 8, 2022) ("Medical evidence supports the existence of the condition, but the need for restrictions cannot be inferred from the diagnosis alone."); *Weaver v. Berryhill*, 746 F. App'x 574, 579 (7th Cir. 2018) ("It was [the plaintiff's] burden to establish not just the existence of the conditions, but to provide evidence that they support specific limitations affecting her capacity to work."); *Perez v. Astrue*, 881 F. Supp. 2d 916, 945 (N.D. Ill. 2012) ("A diagnoses, or symptom for that matter, does not

automatically translate to a limitation or impairment and simply listing them proves nothing."). However, contrary to the Commissioner's contention, there is substantial evidence in the record that could support a conclusion that Thomas may have limitations associated with BPD, but the ALJ failed to consider it in any detail.

The Commissioner also argues that Thomas fails to articulate specifically how the ALJ's RFC assessment was inadequate to account for her symptoms. *See Harris v. Kijakazi*, No. 20-cv-639-jdp, 2021 WL 3124207, at *1 (W.D. Wis. Jul. 23, 2021) (Plaintiff has burden "to identify additional specific restrictions supported by the record that the ALJ should have included but did not."). The Commissioner is incorrect. Thomas contends that her symptoms are consistent with a marked social interaction limitation and merit greater restrictions than those assessed by the ALJ. *See* dkt. 11 at 18. She also specifically argues that the ALJ's RFC limitation of "occasional interaction with coworkers and supervisors" does not account for the type of moderate social interaction limitations found by Dr. Coyle, including: working in coordination with or in proximity to others without interruptions from psychologically based symptoms; accepting instructions and responding appropriately to criticism from supervisors; getting along with coworkers or peers without distracting them or exhibiting behavioral extremes; and maintaining socially appropriate behavior.[2] Although Coyle wrote in her narrative statement that Thomas can participate in "typical interactions" with coworkers and supervisors "while completing simple tasks of a nonsocial and independent nature," the ALJ's unqualified limitation of occasional interaction with coworkers and supervisors, without more, does not take into consideration the nonsocial and independent tasks that Coyle describes.

---

[2] Thomas has not challenged the ALJ's reasons for discounting the opinions offered by Herber, Beraldi, and Engstrom, so she has waived any such argument. *See Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013) (claimant waives issues not raised in district court).

"What matters is whether the RFC adequately accounts for a claimant's psychological symptoms." *Harris*, 2021 WL 3124207, at *1 (citing *Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019)).  The ALJ in this case did not base her decision upon consideration of all the evidence relevant to Thomas's ability to interact with others and adapt to new or changing situations, *see Bates v. Colvin*, 736 F.3d 1093, 1099 (7th Cir. 2013) ("while an ALJ need not mention every piece of evidence in her opinion, she cannot ignore a line of evidence that suggests a disability"), and her error cannot be considered harmless, *see Butler v. Kijakazi*, 4 F.4th 498, 504 (7th Cir. 2021) ("In assessing whether an error is harmless, we examine the record to determine whether we can "predict with great confidence what the result of remand will be."); *Jones v. Saul*, 823 Fed. App'x 434, 440 (7th Cir. 2020) ("We cannot be sure that any error was harmless if the evidence does not "conclusively" establish a material fact in a case."). Accordingly, this case must be remanded for further consideration of Thomas's mental health symptoms, particularly those associated with borderline personality disorder.

ORDER

IT IS ORDERED that the decision of defendant Kilolo Kijakazi, Acting Commissioner of Social Security, is REVERSED, and this case is REMANDED for further proceedings consistent with this opinion.

Entered this 27th day of December, 2023.

BY THE COURT:

/s/

_____
STEPHEN L. CROCKER
Magistrate Judge

12